# BUSINESS PROMISSORY NOTE AND SECURITY AGREEMENT

**BORROWER: Absolut Residential Care L.L.C.**

**PRINCIPAL (including processing fees): $11,095.95**

**DATE: 1/3/2014**

**1. PROMISE TO PAY: Absolut Residential Care L.L.C.** ("Borrower"), with its principal place of business located at 12 Front Street, East Rochester, NH 03868, does hereby promise to pay to the order of **WORLD BUSINESS LENDERS, LLC** ("Lender") at its offices located at 120 West 45th Street, New York, New York 10036, or at such other location or in such other manner as designated by Lender, the sum of **Eleven Thousand Ninety Five Dollars and Ninety Five Cents ($11,095.95)** ("Principal") plus interest at the daily interest rate set forth below in Section 2 in accordance with the payment schedule set forth below in Section 3.

**2. INTEREST RATE:** The unpaid Principal shall bear interest at the rate of **0.342465753425%** per day until paid in full.

**3. PAYMENT SCHEDULE/APPLICATION OF PAYMENTS:** Borrower shall repay the Principal and interest commencing on **1/7/2014** and on each Business Day thereafter until **7/3/2014** with each daily payment equaling **$118.20**, followed by a final payment of **$116.67** on **7/7/2014**, when any remaining outstanding Principal, interest and other unpaid charges shall be due and payable in full. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The period commencing on 1/7/2014 and ending on 7/7/2014 is referred to as the "Repayment Period."

All payments shall be made by automatic ACH debit from the "Designated Checking Account" set forth in the Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) given by Borrower to Lender, and Borrower shall maintain balances in the Designated Checking Account sufficient to make each daily payment due under this Business Promissory Note and Security Agreement ("Loan Agreement").

Payments shall be applied on the date received first to late charges and other charges due under this Loan Agreement, then to unpaid accrued interest, and then to Principal.

**4. PREPAYMENT:** Borrower has the right to prepay the unpaid Principal in full at any time, but may not make partial prepayments (except as required by applicable law). Any prepayment shall include a prepayment charge equal to the greater of (a) fifteen percent (15%) of the amount of the unpaid Principal or (b) the aggregate amount required to be repaid by Borrower to Lender during the Repayment Period reduced by (i) the aggregate amount of any payments made by Borrower to Lender pursuant to Section 3 above prior to the date of such prepayment and (ii) the amount of the unpaid Principal. This prepayment charge is in addition to any interest calculated and accrued in accordance with Section 2 above. No prepayment is permitted unless all outstanding charges are paid in full as of the date of prepayment. If Borrower desires to prepay, Borrower shall contact Lender at its address above in Section 1 or at 212-293-8200, and Lender shall provide Borrower with the amount necessary to prepay as of a date designated by Borrower. For the avoidance of doubt, as permitted under applicable law, if the Obligations have been accelerated on the happening of an Event of Default, payment of Principal and interest shall be deemed a prepayment for purposes of this Section 4.

**5. RETURNED PAYMENT CHARGE:** Borrower will pay a charge of **thirty-five dollars ($35.00)** in connection with any payment by check or electronic transfer that is returned unpaid because of an insufficient balance in the Designated Checking Account or otherwise.

**6. SECURITY INTEREST:** Borrower grants to Lender a security interest in and to any and all property as described below in this Section 6 to secure payment of all debts, obligations and liabilities of Borrower to Lender evidenced by this Loan Agreement or any prior loan agreement with Lender ("Obligations").  This is a continuing security interest and will continue in effect even though all or any part of the Obligations is paid in full and even though for a period of time Borrower may not be indebted to Lender. The collateral includes the property purchased with the proceeds described as follows (if any):
NONE_____, ("Purchase Money Collateral") and also includes all personal property now owned or hereafter acquired by the Borrower (which, along with the Purchase Money Collateral, is collectively referred to as "Collateral"), including, but not limited to, all goods (except consumer goods), farm products, inventory, equipment, furniture, money, instruments, accounts, accounts receivable, contract rights, documents, chattel paper, general intangibles, including, but not limited to, all products and proceeds of Collateral and all additions and accessions to, replacements of, insurance proceeds of, and documents covering Collateral, all property received wholly or partly in trade or exchange for Collateral, all leases of Collateral and all rents, revenues, issues, profits and proceeds arising from the sale, lease encumbrance, collection, or any other temporary or permanent disposition, of the Collateral or any interest therein.  Borrower agrees that Lender may file any financing statement, lien entry form or other document Lender requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender as may be necessary to accomplish said filing and to do whatever Lender deems necessary to protect Lender's security interest in the Collateral.

Borrower shall:  maintain the Collateral in good condition and repair and not permit its value to be impaired; keep it free from all liens, encumbrances and security interests (other than those created or expressly permitted by this Loan Agreement); defend it against all claims and legal proceedings by persons other than Lender; pay and discharge when due all taxes, license fees, levies and other charges upon it; not sell, lease or otherwise dispose of it or permit it to become a fixture or an accession to other goods, except as specifically authorized by Lender in writing; and not permit it to be used in violation of any applicable law, regulation or policy of insurance.  Lender is authorized to examine the Collateral wherever located at any reasonable time or times and Borrower shall assist Lender in making any such inspection.

Borrower shall pay all expenses and, upon request, take any action reasonably deemed advisable by Lender to preserve the Collateral or to establish, determine priority of, perfect, continue perfected, terminate and/or enforce Lender's interest in the Collateral or rights under this Loan Agreement and, further, Borrower authorizes Lender, with full power of substitution, to execute in Borrower's name any documents necessary to perfect, amend or to continue Lender's interest in the Collateral or rights under this Loan Agreement or to demand termination of filings of other secured parties. Lender has no duty to protect, insure or realize upon the Collateral. Loss of or damage to the Collateral shall not release Borrower from any of the Obligations.

**7. WARRANTIES:** Borrower warrants that:

(a) Borrower is the owner of or is acquiring the Purchase Money Collateral free of all liens, encumbrances and security interests (except Lender's security interest), and is the owner of all other Collateral free and of all liens, encumbrances and security interests, except Lender's security interest and the following security interests of: NONE;

(b) the proceeds of this Loan Agreement will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods;

(c) the Collateral will be kept at Borrower's address set forth above in Section 1, or at the following address: <u>NONE</u>;

(d) Borrower's name in Section 1 above is its exact name on its organizing and/or registered documents, if any, and is Borrower's principal place of business. Borrower shall immediately advise Lender of any change in Borrower's name or address as set forth above in Section 1;

(e) Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted;

(f) Borrower has the full power and authority to execute, deliver and perform all transactions contemplated by this Loan Agreement and the performance of and compliance with the terms of this Loan Agreement will not violate the Borrower's organizational documents or constitute a default of any contract, agreement or other instrument to which Borrower is a party;

(g) Borrower has duly authorized the execution, delivery and performance of this Loan Agreement and has duly executed and delivered this Loan Agreement, and this Loan Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against it in accordance with its terms;

(h) there is no action, suit, proceeding or investigation pending or, to Borrower's knowledge, threatened against or affecting it or any of its assets before or by any court or other governmental authority which, if determined adversely to it, would have a material adverse effect on its financial condition, business or prospects, or the value of the Collateral; and

(i) Borrower will provide any financial information on request or permit an examination of its books and records to permit Lender to confirm Borrower's ability to pay its Obligations and all other financial obligations.

**8. <u>DEFAULT</u>:** On the happening of any of the following events (each an "Event of Default"):

(a) failure by Borrower to pay any daily or other payment required by this Loan Agreement when due;

(b) failure by Borrower to observe, perform, keep or abide by any term, covenant or condition contained in this Loan Agreement, or any other document or instrument given to Lender;

(c) the filing of a bankruptcy proceeding, assignment for the benefit of creditors, issuance of a judgment execution, garnishment or levy against, or the appointment of a representative of any kind for the commencement of any proceeding for relief from indebtedness by or against Borrower;

(d) the happening of any event, which, in the reasonable judgment of Lender, adversely affects Borrower's ability or the ability of any guarantor of Borrower's Obligations under this Loan Agreement ("Guarantor") to repay Borrower's Obligations, or materially affects the value of the Collateral;

(e) any written representation, statement or warranty made to Lender by Borrower or any Guarantor is untrue or is breached;

(f) the occurrence of (I) a default under any guaranty of Borrower's Obligations ("Guaranty"), or any other document or instrument given to Lender, or (II) an event of default under any other loan

agreement that Borrower may have with any other lender;

(g) any Guaranty is revoked or becomes unenforceable for any reason;

(h) Lender, upon examination of Borrower's financial information during the term of this Loan Agreement, becomes insecure in Borrower's ability to pay the Obligations,

Lender, at its option, without notice or demand (except as required by applicable law), may (A) declare the entire unpaid balance of all Obligations under this Loan Agreement or other agreements immediately due and payable, and shall have the right to proceed to collect such Obligations under applicable law and enforce its rights under any Guaranty; and (B) proceed against the Collateral as permitted under the applicable Uniform Commercial Code or any other applicable law. As permitted under the Uniform Commercial Code, Lender may take possession of Collateral without notice or hearing, which Borrower waives, and upon demand, Borrower shall assemble the Collateral and make it available to Lender at any convenient place designated by Lender.  Lender's receipt of any payment after the occurrence of an Event of Default, whether or not the Obligations have been accelerated, shall not constitute a waiver of the default or of Lender's rights or remedies upon such default, including Lender's right to accelerate the unpaid balance of the Obligations and pursue collection thereof.  Election by Lender to pursue or waive any remedy shall not exclude pursuit of any other remedy.

**9. ATTORNEYS' FEES AND COLLECTION COSTS:** In the event Lender retains counsel with respect to enforcement of its rights under this Loan Agreement or any other document or instrument given to Lender, Borrower agrees to pay all expenses of Lender in enforcing its rights to collect the Obligations or in taking possession, holding, preparing for disposition, and disposing of the Collateral, including Lender's reasonable attorneys' fees (whether or not an action is commenced and whether or not in the court of original jurisdiction, appellate court, bankruptcy court or otherwise) and all costs of collection of any judgment and any costs of appeal.

**10. SALE OF LOAN AGREEMENT:** This Loan Agreement, or an interest in this Loan Agreement, together with the rights to the Collateral, may be sold, assigned, transferred or conveyed by Lender one or more times.

**11. INDEMNIFICATION:** Except for Lender's willful misconduct, Borrower will indemnify and save Lender harmless from all loss, costs, damage, liability or expenses (including, without limitation, court costs and reasonable attorneys' fees) that Lender may sustain or incur by reason of defending or protecting Lender's security interest or the priority thereof or enforcing its rights to collect the Obligations, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or in connection with this Loan Agreement and/or any other documents or instruments now or hereafter executed in connection with this Loan Agreement and/or the Obligations and/or the Collateral.  This indemnity shall survive the repayment of the Obligations and the termination of this Loan Agreement.

**12. MISCELLANEOUS:**
(a) Delay or failure of Lender to exercise any of its rights under this Loan Agreement shall not be deemed a waiver thereof.  No waiver of any condition or requirement shall operate as a waiver of any other or subsequent condition or requirement.

(b) Borrower waives trial by jury with respect to any action arising out of or relating to this Loan Agreement.

(c) This Loan Agreement may not be modified orally, and may be modified only upon written agreement signed by Lender.

(d) This Loan Agreement shall be governed by the laws of the State (or Commonwealth, as the case may be) of Borrower's address set forth above in Section 1 ("Borrower's State").

(e) Any action or proceeding to enforce any rights or obligations arising out of this Loan Agreement shall be commenced in any state or federal court located in Borrower's State, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower at the address specified by Borrower above in Section 1, or as otherwise provided by the federal law or the laws of Borrower's State. Borrower and Lender agree that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

(f) Without affecting the liability of Borrower or any Guarantor, Lender may accept partial payments marked "in full" or otherwise, release or impair any Collateral or agree not to sue any party liable on this Loan Agreement without waiving any of its rights hereunder.

(g) Presentment, protest, demand and notice of dishonor are waived.

(h) Without affecting the liability of any Guarantor, Lender may from time to time, without notice, renew or extend the time for payment.

(i) Borrower expressly agrees that the interest rate set forth above in Section 2 is appropriate under the circumstances and shall be the applicable rate at which unpaid Principal (and Costs) shall bear interest under this Loan Agreement, notwithstanding any rate of interest prescribed by statute from time to time; provided, however, if fulfillment of any provisions of this Loan Agreement or any other instrument securing the Obligations is subject to a law that sets maximum interest rates or other charges, and that law is finally interpreted so that the interest or other fees collected or to be collected in connection with this Loan Agreement exceed the permitted limits, then (I) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit and (II) any sums already collected from Borrower that exceed the permitted limits will be refunded or credited to Borrower and the obligations created by this Loan Agreement shall be fulfilled to the limit of such validity as is permitted by law.

(j) Borrower shall keep the Collateral and Lender's interest in it insured under policies with such provisions, for such amounts and by such insurers as shall be satisfactory to Lender from time to time, and shall furnish evidence of such insurance satisfactory to Lender upon request. Borrower assigns (and directs any insurer to pay) to Lender the proceeds of all such insurance and any premium refund and authorizes Lender to endorse in the name of Borrower any instrument for such proceeds or refunds and, at the option of Lender, to apply such proceeds and refunds to any unpaid balance of the Obligations, whether or not due, and/or to restoration of the Collateral, returning any excess to Borrower. Lender is authorized, in the name of Borrower or otherwise, to make, adjust and/or settle claims under any insurance on the Collateral, or cancel the same after the occurrence of an Event of Default.

(k) If Borrower fails to perform any of Borrower's duties set forth in this Loan Agreement or in any evidence of or document relating to the Obligations, Lender is authorized, in Borrower's name or otherwise, to take any such action, including, without limitation, signing Borrower's name or paying any amount so required, and the cost ("Cost") shall be one of the Obligations secured by this Loan Agreement and shall be payable by Borrower upon Lender's demand with interest at the interest rate set forth above in Section 2 from the date of payment by Lender.

(l) Borrower releases Lender from any liability for any act or omission relating to the Obligations, the

Collateral or this Loan Agreement, except Lender's willful misconduct.

(m) Invalidity or unenforceability of any provision of this Loan Agreement shall not affect the validity or enforceability of any other provision.

(n) The terms of this Loan Agreement shall be binding upon Borrower and its permitted successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**PRIOR TO SIGNING THIS LOAN AGREEMENT, BORROWER READ AND UNDERSTOOD ALL OF THE PROVISIONS OF THIS LOAN AGREEMENT. AFTER DUE CONSIDERATION, AND THE OPPORTUNITY TO CONSULT WITH OTHER LENDERS AND AN ATTORNEY, ACCOUNTANT OR OTHER COMPETENT PROFESSIONAL OF ITS CHOICE, BORROWER KNOWINGLY, WILLFULLY AND VOLUNTARILY AGREES TO THE TERMS OF THIS LOAN AGREEMENT.**

**BORROWER ACKNOWLEDGES RECEIPT OF A FULLY COMPLETED AND EXECUTED VERSION OF THIS LOAN AGREEMENT.**

BORROWER: Absolut Residential Care L.L.C.

By: *Selena S Randolph* (DocuSigned by: E95638E3455C42D...)

Printed Name: Selena S Randolph

Title: Owner

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK
ACKNOWLEDGMENT OF SIGNATURE APPEARS ON THE FOLLOWING PAGE**

## ACKNOWLEDGMENT

STATE/COMMONWEALTH OF New Hampshire        )

                                                                                                    )        ss.:

COUNTY OF _____        )

On the_____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Business Promissory Note and Security Agreement and acknowledged to me that she/he executed the same in her/his capacity as_____
of_____, and that by her/his signature on the Business Promissory Note and Security Agreement, the individual, or the person upon behalf of which the individual acted, executed the Business Promissory Note and Security Agreement.

_____
Notary Public
My Commission expires:

**CONTINUING GUARANTY.** Dated 6/17/2014

**GUARANTY.** For value received, and to induce WORLD BUSINESS LENDERS, LLC ("Lender"), with offices at 120 West 45th Street, New York, New York 10036, to extend credit or grant or continue other credit accommodations to Absolut Residential Care L.L.C.. ("Borrower"), the undersigned ("Guarantor," whether one or more) jointly and severally guarantees payment of the Obligations defined below when due or at the time any Borrower becomes the subject of bankruptcy or other insolvency proceedings. Except as provided below, "Obligations" mean all debts, obligations and liabilities of Borrower to Lender arising out of credit previously granted, credit contemporaneously granted or credit granted in the future by Lender to Borrower. Obligations include interest and charges and the amount of payments made to Lender or another by or on behalf of Borrower which are recovered from Lender by a trustee, receiver, creditor or other party pursuant to applicable federal or state law, and all costs, expenses and attorneys' fees at any time paid or incurred before and after judgment in endeavoring to collect all or part of any of the above, or to realize upon this Guaranty, or any collateral securing any of the above, including those incurred in successful defense or settlement of any counterclaim brought by Borrower or Guarantor or incident to any action or proceeding involving Borrower or Guarantor brought pursuant to the United States Bankruptcy Code. Obligations do not include personal, consumer, family or household transactions. Guarantor grants to Lender a security interest and lien in any credit balance and other money now owing or hereafter owed Guarantor by Lender.  Lender may, at any time after the occurrence of an event of default with respect to any Obligation, without prior notice or demand, set off against any such credit balance or other money any amount owing upon the Obligations. This Guaranty also is secured by all existing and future security agreements between Lender and Guarantor. This Guaranty is valid and enforce able against Guarantor even though any Obligation is invalid or unenforceable against the Borrower.

**WAIVER.** Guarantor expressly waives (a) notice of the acceptance of this Guaranty, the creation of any present or future Obligation, default under any Obligation, proceedings to collect from the Borrower or anyone else, (b) all diligence of collection and presentment, demand, notice and protest, (c) any right to disclosures from Lender regarding the financial condition of the Borrower or the enforceability of the Obligations, and (d) all other legal and equitable defenses of surety ship and impairment of collateral. No claim, including a claim for reimbursement, subrogation, contribution or indemnification which Guarantor may, as a guarantor of the Obligations, have against a co-guarantor of any of the Obligations or against the Borrower shall be enforced or any payment accepted until the Obligations are paid in full and no payments to or collections by Lender are subject to any right of recovery.

**CONSENT.** With respect to any of the Obligations, Lender may from time to time before or after revocation of this Guaranty without notice to Guarantor and without affecting the liability of Guarantor (a) surrender, release, impair, sell or otherwise dispose of any security or collateral for the Obligations, (b) release or agree not to sue any guarantor or surety, (c) fail to perfect its security interest in or realize upon any security or collateral, (d) fail to realize upon any of the Obligations or to proceed against any Borrower or any guarantor or surety, (e) renew or extend the time of payment, (f) increase or decrease the rate of interest or the amount of the Obligations, (g) accept additional security or collateral, (h) determine the allocation and application of payments and credits and accept partial payments, (i) apply the proceeds of disposition of any collateral for the Obligations to any obligation of Borrower secured by such collateral in such order and a mounts as it elects, (j) determine what, if anything, may at any time be done with reference to any security or collateral, and (k) settle or compromise the amount due or owing or claimed to be due or owing from the Borrower, which settlement or compromise shall not affect Guarantor's liability for the full amount of the unpaid Obligations. Guarantor expressly consents to and waives notice of all of the above. Guarantor consents to and authorizes Lender or its agents to obtain information concerning Guarantor's financial condition, including credit reports. Nothing contained in this Guaranty shall require Lender to first seek or exhaust any remedy against Borrower or to first proceed against any collateral or security for any of the Obligations or this Guaranty.

**PERSONS BOUND.** This Guaranty benefits and is enforceable by Lender, and its successors and assigns (collectively called "successors" and each a "successor"), and binds Guarantor, and Guarantor's heirs, personal representatives, successors and assigns. This Guaranty shall continue in full force and effect notwithstanding any change in structure or status of Borrower or Lender, whether by merger, consolidation, reorganization or otherwise, or assignment of this Guaranty to a successor Lender. **This Guaranty includes additional provisions on the next page.**

| NOTICE TO GUARANTOR |
|---|
| You are being asked to guarantee the past, present and future Obligations of Borrower. If Borrower does not pay, you will have to. You may also have to pay collection costs. Lender can collect the Obligations from you without first trying to collect from Borrower or another guarantor or proceeding against any collateral or other security for the Obligations. |

Selena S Randolph
(Guarantor Name)

*Selena S Randolph*  (DocuSigned by: E95638E3455C42D...)
(Guarantor Signature)

66 Prospect Street
(Guarantor Address)

**For Married Residents Only:** Each Guarantor who signs below represents that this obligation is incurred in the interest of his or her marriage or family.

X_____   X_____

Acknowledgement of signature on page (12).

*Rev. May 2012*            WBL Initials _____ Date _____           P a g e | **13**

## ADDITIONAL PROVISIONS

**ENTIRE AGREEMENT.** This Guaranty is intended by Guarantor and Lender as a final expression of this Guaranty and as a complete and exclusive statement of its terms, there being no conditions to the full effectiveness of this Guaranty. This Guaranty may not be supplemented or modified, except in writing by Lender.

**REPRESENTATIONS.** Guarantor acknowledges and agrees that Lender (a) has not made any representations or warranties with respect to, (b) does not assume any responsibility to Guarantor for, and (c) has no duty to provide information to Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Borrower. **Guarantor has independently determined the creditworthiness of Borrower and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on Lender continue to make such determinations.**

**REVOCATION.** This is a continuing guaranty and shall remain in full force and effect until Lender receives written notice of its revocation signed by Guarantor or actual notice of the death of Guarantor. Upon revocation by written notice or actual notice of death, this Guaranty shall continue in full force and effect as to all Obligations contracted for or incurred before revocation and, as to them, Lender shall have the rights provided by this Guaranty as if no revocation had occurred. Any renewal, extension or increase in the interest rate of any such Obligation, whether made before or after revocation, shall constitute an Obligation contracted for or incurred before revocation. Obligations contracted for or incurred before revocation shall also include credit extended after revocation pursuant to commitments made before revocation. Revocation by one Guarantor shall not affect any of the liabilities or obligations of any other Guarantor and this Guaranty shall continue in full force and effect with respect to them.

**INTERPRETATION.** The validity, construction and enforcement of this Guaranty are governed by the laws of the State/Commonwealth of New Hampshire without regard to its conflicts of laws rules. All terms not otherwise defined have the meanings assigned to them by the applicable Uniform Commercial Code. Invalidity or unenforceability of any provision of this Guaranty shall not affect the validity or enforceability of any other provision.

**JURISDICTION.** Guarantor irrevocably consents with respect to any suit, action or proceeding relating to this Guaranty or any of the other loan documents relating to the Obligations, that venue shall be in any court of the State/Commonwealth of New Hampshire or in the United States District Courts sitting in New Hampshire, and Guarantor waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be properly served and confer personal jurisdiction if served by registered or certified mail to Guarantor at the address specified by Guarantor above, or as otherwise provided by the laws of the State/Commonwealth of New Hampshire or the United States of America. Guarantor agrees that venue is proper in such courts and that such courts shall have sole jurisdiction over such action.

### JURY WAIVER

**GUARANTOR KNOWINGLY AND VOLUNTARILY WAIVES TRIAL BY JURY IN ANY ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM BASED UPON, ARISING OUT OF OR IN ANY WAY RELATING TO THIS GUARANTY, THE OBLIGATIONS GUARANTEED BY THIS GUARANTY OR ANY CONDUCT, ACT OR OMISSION OF LENDER, AND AGREES AND CONSENTS THAT ANY SUCH ACTION, PROCEEDING, CLAIM OR COUNTERCLAIM SHALL BE DECIDED BY TRIAL TO THE COURT WITHOUT A JURY. GUARANTOR ACKNOWLEDGES AND UNDERSTANDS THAT THIS WAIVER AND CONSENT CONSTITUTES A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO THE TRANSACTION WITH THE BORROWER.**

**GUARANTOR**   Selena S Randolph

*DocuSigned by:*
Selena S Randolph
E95638E3455C42D...

## ACKNOWLEDGEMENT

STATE/COMMONWEALTH OF New Hampshire         )

                                             ) ss.

COUNTY OF _____                    )

On the _____ day of _____, in the year ____, before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared  Selena S Randolph, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Continuing Guaranty (Unlimited) and acknowledged to me that she/he executed the same in her/his capacity, and that by her/his signature on the Continuing Guaranty (Unlimited), the individual, or the person upon behalf of which the individual acted, executed the Continuing Guaranty (Unlimited).

                                              Notary Public
                                              My Commission expires:

DocuSign Envelope ID: F6A10859-86D6-4465-9185-4A49F1A59B32



**COOPERATION AGREEMENT**

DATE: 1/3/2014

In connection with the business loan to Borrower evidenced by the Business Promissory Note and Security Agreement of even date herewith, Borrower hereby agrees:

In the event any further documentation is required by Lender in connection with the loan, Borrower hereby agrees to execute such documentation, including, but not limited to, any amendments, corrections, deletions or additions to the loan documents being executed on even date herewith.

In the event Borrower is required to furnish such necessary documentation and fails to do so within ten (10) days from receipt of written demand, then such failure shall be an event of default under the terms of the loan and Lender shall have the right to demand payment in full under the loan documents and enforce all other rights against Borrower.

The terms "Borrower" and "Lender" have the same meanings as set forth in the Business Promissory Note and Security Agreement.

BORROWER: Absolut Residential Care L.L.C.

By: _____*Selena S Randolph*_____
    E95638E3455C42D...

Printed Name: ___Selena S Randolph___

Title: ___Owner___

STATE/COMMONWEALTH OF New Hampshire           )

                                              )   ss.:

COUNTY OF _____                        )

On the_____ day of _____, in the year ____ before me, the undersigned, a notary public in and for said State/Commonwealth, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within Cooperation Agreement and acknowledged to me that she/he executed the same in her/his capacity as_____ of_____, and that by her/his signature on the Cooperation Agreement, the individual, or the person upon behalf of which the individual acted, executed the Cooperation Agreement.

_____
Notary Public
My Commission expires: