UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

**Selena S. Randolph**

                **Plaintiff**

                                        Civil No.: 1:18-cv-00730-JL

**v.**

**WBL SPE II, LLC**

                **Defendant**

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, WBL SPE II, LLC (hereinafter "WBL"), by and through counsel, Upton & Hatfield, LLP, and respectfully submits this memorandum of law in support of its Motion for Summary Judgment, stating in support as follows:

### I.    Introduction

WBL is entitled to summary judgment on all the plaintiff's remaining claims in this suit.[1] First and foremost, Ms. Randolph does not have standing to bring this suit. She filed her complaint alleging that the promissory note between WBL and Absolut Residential Care, LLC ("Absolut") is illegal and has requested that this Court declare it null and void. The plaintiff, however, is not a party to the promissory note. Ms. Randolph does not have a loan from WBL. She is also not the recipient of any funds from WBL. A New Hampshire limited liability company, Absolut, is the correct party and did receive the funds. Ms. Randolph is the sole member of this LLC, but the promissory note for the loan in question is between Absolut and WBL. Randolph is attempting to turn a business loan into a personal loan.

---

[1] Only the plaintiff's claims under 397-A:16-a, RSA 399-A:11, and RSA 358-A:2 are left after the proceedings on the plaintiff's request for a preliminary injunction. It is unclear whether the plaintiff still wishes to move forward on her claims under RSA 358-A because they were not briefed in her Motion for Summary Judgment, but WBL has included them here in an abundance of caution.

Furthermore, even if Ms. Randolph does have standing, she still cannot prevail. First, RSA 397-A and RSA 399-A do not allow a plaintiff a private cause of action. Both of these chapters are to be enforced by the New Hampshire Banking Department and the Banking Commissioner. Even with a private right of action under these statutes, the definition sections for both chapters clearly outlines why those chapters do not apply to this $11,095.95 business loan made by WBL to Absolut.

For these reasons and the analysis more fully discussed below, WBL submits that it is entitled to judgment as a matter of law on all the plaintiff's remaining claims.

**II.     Undisputed Material Facts**

Absolut is a New Hampshire limited liability company formed in May 2006. Exh. A, NH Sec. of State Certificate of Formation. According to its filing, Absolut is a residential provider and personal care provider. Id. The plaintiff, Selena Randolph is the manager of Absolut. Id.

On or around October 29, 2013, Absolut sought a business loan and submitted an application for a loan with WBL. Exh. B, Business Loan Application. Within this application, Absolut represented to WBL that it was seeking a loan in an amount from $10,000 to $20,000. Id. These funds were to be for "real estate portfolio expansion." Id. In further communication with WBL, Absolut stated that this expansion was to increase the number of properties from three to five. Exh. C, Email to WBL dated Dec. 17, 2013.

After going through underwriting, WBL offered Absolut a loan in the amount of $11,095.95. Exh. D, Business Promissory Note and Security Agreement. This loan document is dated Jan. 3, 2014. Id. at 1. It lists the borrower as "Absolut Residential Care L.L.C." Id. There is no secured interest in real property included in this promissory note. Id. at 2, sec. 6. As the owner and manager of Absolut, Ms. Randolph signed the note. Id. at 6.

Other documents included in the loan closing were:

Business Loan Summary (Exh. E)- This document disclosed the amount of the loan, $11,095.95; the amount of the processing fee, $1,095.95; the total amount of interest Absolut would be charged, $3,795.72; Absolut's total repayment amount; the payment schedule; any prepayment charges; and charges Absolut would incur for payment returned due to NSF.

Business Loan Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) (Exh. F)- In this document, Absolut attested that the bank account being used for deposit of the loan and loan payments was a business account: "By signing below, Borrower attests that the Designated Checking Account was established by Borrower, and the loan proceeds will be used for business purposes only and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods." *Id*. at ¶ 3. This document defines "Borrower" as Absolut Residential Care, LLC. *Id*. at above signature line.

Business Loan Purpose Affidavit (Exh. G)- In this affidavit, Absolut swore under oath that, "the proceed of the Loan Agreement of Eleven Thousand Ninety Five Dollars and Ninety Five Cents ($11,095.95), being furnished to Borrower will be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods." *Id*. at ¶ 2. Again, this document defines "Borrower" as Absolut Residential Care, LLC. *Id*. at above signature line.

Business Promissory Note and Security Agreement (Exh. D)- The note itself further defines the borrower as Absolut Residential Care, LLC. It states the loan amount of $11,095.95. *Id*. at sec. 1. The interest rate per day of 0.342465753425% is listed. *Id*. at sec. 2. This document also contains a warranty from Absolut that "the proceeds of this Loan Agreement will

be used for business purposes only, and not for personal, consumer, family or household purposes or to purchase personal, consumer, family or household goods." *Id*. at sec. 7(b). Absolut further warranted by signing the Note that the "Borrower is duly organized, validly existing and in good standing under the law of the jurisdiction in which it is organized, and has all licenses and authorizations necessary to carry on its business as now being conducted." *Id*. at sec. 7(e).

In order for WBL to extend credit to Absolut, it required a guaranty from Ms. Randolph. Exh. H, Randolph Guaranty. As part of the guaranty, the plaintiff used one of her properties to secure the loan and executed a mortgage for 16 Front St, Rochester, NH. Exh. I, Mortgage. This Mortgage states, "This Mortgage dated January 3, 2014 is made and executed between Selena S. Randolph, whose address is 66 Prospect St, Rochester, NH 03868 (referred to as 'Grantor') and World Business Lenders, LLC, whose address is 120 W. 45th Street, New York, NH 10036 (referred to below as 'Lender')." Id. at 1.

After receiving the signed documents, WBL deposited the loan proceeds into Absolut's checking account with Citizens Bank. Pl. Compl. Exh. 2. Unfortunately, Absolut did not repay the loan; it missed many payments and several payments were returned for insufficient funds.

In January 2017, the plaintiff personally filed for bankruptcy in U.S. Bankruptcy Court for the District of New Hampshire, docket # 17-10121-BAH.[2] WBL filed a Motion for Relief from Stay in that proceeding on April 13, 2018. The Court granted WBL's motion on May 9, 2018, and WBL moved to collect the balance of the loan, interest, and other fees permitted under the guaranty from the plaintiff by foreclosing on 16 Front St, Rochester, NH. Pl. Compl. Exh. 4.

The plaintiff initially filed suit against WBL to prevent the foreclosure auction scheduled in August of 2018. WBL voluntarily agreed to stop the foreclosure process and has not initiated

---

[2] This bankruptcy proceeding was dismissed by the court.

4

any further foreclosure proceedings.  The first mortgage holder on 16 Front St, however, has instituted several foreclosure auctions in this time.  As previously filed with this Court, the plaintiff then filed additional bankruptcies: (1) a Chapter 13 voluntary petition in the Bankruptcy Court for the District of Massachusetts, docket # 19-10869; and (2) a Chapter 7 voluntary petition in the Bankruptcy Court for the District of New Hampshire, docket # 19-10380-BAH.

Both of these actions were dismissed by the courts, and the first mortgage company scheduled a foreclosure auction on August 29, 2019.  On August 28, 2019, Ms. Randolph deed the property by Quit Claim Deed to her daughter, Qiayra Randolph, and to Absolut Affordable Housing, LLC.  Exh. J, Quit Claim Deed.  Absolut Affordable Housing, LLC is a New Hampshire limited liability company formed on August 28, 2019.  Exh. K, AAH Certificate of Formation.  Qiayra is the sole member and manager listed on the Certificate of Formation.  Id.

The plaintiff now file her Motion for Summary Judgment, and WBL objects and moves for summary judgment on all counts in its favor.

### III. Analysis

#### a. Standard of Review

Summary judgment shall be granted when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only when it impacts the outcome of the litigation.  Hughes v. Southern New Hampshire Svcs., Inc., 2012 DNH 196 at *1 (November 26, 2012)(slip op.)(citing Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green ursing Ctr., 103 F.3d 196, 199–200 (1st cir.1996).

After the moving party asserts an "absence of evidence to support the non-moving party's case, the non-moving party must offer definite, competent evidence to rebut the motion."

Meuser v. Federal Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)(internal quotations and citations omitted).  "[T]he mere existence of some alleged dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

While the record should be construed in the light most favorable to the non-moving party, the Court "may ignore bald assertions, unsupported conclusion, and mere speculation."  Smith v. Wren, 2009 WL 1783539, at *1 (DNH Dec. 2, 2009)(citing Serapion v. Martinez, 119 F.3d 982, 987 (1st Cir.1997)).  The purpose of summary judgment is to look beyond the parties' pleadings and at the actual proof to determine whether a triable issue exists.  Amherst Country Club v. Harleysville Worcester Ins. Co., 561 F.Supp.2d 138, 141 (DNH 2008).

In cross motions for summary judgment, "the court applies the same standard applicable to all summary judgment motions, but considers the motions separately."  Villar v. FBI, 2017 U.S. Dist. LEXIS 133061, at * 1, 2017 WL 3602008 (DNH Aug. 21, 2017).

In this present matter, based on the undisputed material facts of this case, WBL is entitled to summary judgment as there are no triable issues.

### b. **The Plaintiff lacks standing to bring the claims alleged in her complaint.**

The general rule on standing is that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." 15 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 101.51[3][a] (3d ed. 2010); Benitez v. Collazo-Collazo, 888 F.2d 930, 932 (1st Cir. 1989)(quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Ms. Randolph has filed suit, bringing claims related to the promissory note for a loan made to Absolut.  Ms. Randolph is the guarantor of the note, as evidenced in a separate contract,

6

but she is not a party to the promissory note. Therefore, she has no standing to bring claims under the promissory note.

 Ms. Randolph made the decision to file suit only in her name and did not include Absolut as a plaintiff.  As the guarantor, Ms. Randolph must show that she has an injury that is distinct and different from Absolut in order to bring claims against Absolut's creditor, WBL.  See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 640 (9th Cir. 1988)(finding a guarantor has no standing to bring a RICO claims when the harm alleged to the guarantor is the same harm alleged to the primary debtor); Roeder v. Alpha Industries, Inc., 814 F.2d 22, 30 (1st Cir. 19887)(finding same); 38 AM JUR 2D GUARANTY § 98 (2019).

  Even assuming that WBL's action to initiate foreclosure proceedings provided a basis for Ms. Randolph to file suit initially to stop the foreclosure, these grounds no longer exist.  Ms. Randolph is no longer the owner of 16 Front St, Rochester, NH and has no legal interest in or standing to prevent the foreclosure.  On Aug. 29, 2019, Ms. Randolph deed to the property to her daughter and to a newly formed LLC, Absolut Affordable Housing.

 Neither has WBL sued Ms. Randolph for collection under the guaranty contract, which might allow her to raise Absolut's claims against WBL as a defense to that potential lawsuit.  See Rhode Island Hosp. Trust Nat'l Bank v. Ohio Cas. Ins. Co., 789 F.2d 74, 78 n.4 (1st Cir. 1986)("Commentators uniformly state that if a creditor sues the surety alone, the surety may not set off the principal's independent claims against the creditor. *Williston* § 1214, at 716; *Simpson* 319-20; *Law of Suretyship* § 7.21, at 234-235. See also Stifel Estate Co. v. Cella, 220 Mo. App. 657, 291 S.W. 515, 518 (1927). When both principal and surety are sued jointly, however, the surety is allowed to set off the principal's claims.  *Simpson* 324-325."); Numerica Sav. Bank,

F.S.B. v. Mountain Lodge Inn, Corp., 134 NH 505, 513 (1991)(upholding the trial court's dismissal of the guarantor's suit against the creditor for lack of standing).

Without Absolut as a party or an injury separate from one potentially suffered by Absolut, Ms. Randolph does not have standing to assert the claims she made in this case. Absolut is the entity which would have standing, but Absolut is not a party to this case. Therefore, WBL is entitled to judgment in its favor as to the entire complaint.

Even assuming that Ms. Randolph has standing for the claims in her lawsuit, however, WBL is still entitled to summary judgment for the reasons discussed below.

## **RSA 397-A:16-a**

### **c. A private right of action under RSA 397-A does not exist.**

RSA 397-A (2014) is entitled "Licensing of Nondepository First Mortgage Bankers and Brokers." It is to "provide for the department's regulation of persons that offer, originate, make, fund, or broker . . . a mortgage loan secured by real property located in the state of New Hampshire." RSA 397-A:2, I (2014)(emphasis added).

RSA 397-A gives rights to the New Hampshire Banking Commissioner and the New Hampshire Banking Department. It provides a framework of regulation for the Banking Department to regulate mortgage loans. There is nothing in this chapter which provides a right of action to an individual plaintiff. See Beckston Invs. Ltd v. Smith (In re Smith), 2001 BNH 44, at *7 (Nov. 28, 2001)(Vaughn, J.)("The statute, if applicable, gives certain rights to the banking department of the State of New Hampshire, but does not provide any other rights or remedies to private parties.")

In fact, RSA 397-A:20, I (2014) states that, "The commissioner shall administer and enforce the provisions of this chapter." This is not an ambiguous statement and leaves no room for the plaintiff's claims here.

Therefore, the plaintiff's claims under RSA 397-A must be dismissed.

### d. **Even if a private right of action exists, this statutory chapter does not apply to Absolut's loan based on the definitions in RSA 397-A:1.**

For RSA 397-A to apply, the loan must be a "mortgage loan," and WBL must qualify as a lender. In addition, the plaintiff must be a "borrower" under the statutory definitions. The definitions outlined in RSA 397-A:1 demonstrate that there is no mortgage loan in this case; WBL is not a lender; and the plaintiff is not the borrower. Therefore, even if the plaintiff does have a private right of action, WBL is entitled to summary judgment on her RSA 397-A claims.

First, the plaintiff is not the borrower for the loan WBL made to Absolut. RSA 397-A:1, III (2014) defines a "borrower" as "a homeowner or purchaser of a home who obtains funds from another by the signing of a note and mortgage deed on a dwelling." Most importantly, the plaintiff is not a party to the promissory note; Absolut is. Ms. Randolph only signed the Note as the owner of Absolut, not on her own behalf. The promissory note clearly states that the entity with which WBL is contracting is Absolut, and this is stated repeatedly throughout the note. The plaintiff cannot claim to be the same as Absolut. In 2006, the plaintiff filed a Certificate of Formation for Absolut Residential Care, LLC with the N.H. Secretary of State; it is a separate legal entity.

Neither was it Ms. Randolph who "obtained funds." According to the bank statement provided by the plaintiff, the funds were deposited in Absolut's checking account at Citizens Bank. Pl. Compl. Exh. 1. As the plaintiff did not receive any loan funds, she cannot be the borrower.

9

Second, the loan in this matter is not a "mortgage loan." RSA 397-A:1, XIV (2014) states that a mortgage loan is "any loan, including a first or second mortgage loan, primarily for personal, family, or household use which is secured in whole or in part by a mortgage."[3] WBL's loan to Absolut was not a loan primarily for personal, family, or household use. Absolut stated in its loan application that the funds would be used for "portfolio expansion." In further correspondence with WBL, Absolut stated that this meant it would increase the number of properties for the business from three to five properties. In completing the loan documents, Absolut signed a Business Lon Purpose Affidavit, which stated that "the proceeds of the Loan Agreement of Eleven Thousand Ninety Five Dollars and Ninety Five cents ($11,095.95) being furnished to Borrower will be used for business purposes only, and not for personal consumer, family or household purposes or to purchase personal, consumer, family or household goods." WBL did not lend any money to Absolut so it could be used for personal, family, or household use. Therefore, the loan is not a mortgage loan under this statutory chapter.

Finally, WBL is not a lender to make it subject to this chapter. RSA 397-A:1, IX defines a "lender" as "any person that provides the initial funding for a mortgage." The loan made by WBL was given to Absolut to allow for business growth. The promissory note at issue is not a mortgage; neither is it secured by an interest in real property. It is the personal guaranty that is secured by a mortgage on 16 Front St. Therefore, WBL is not a lender under RSA 397-A.

As plainly shown, WBL and the loan to Absolut are not regulated by RSA 397-A. Therefore, the plaintiff's claims under this chapter cannot succeed

---

[3] There is no separate definition for a second mortgage under RSA 397-A:1 that was in effect either when Absolut applied for the loan or when WBL made the loan. The plaintiff's claims related to a separate definition for a "second mortgage loan" under RSA 397-A:1 are based on the current version of the statute. According to the plaintiff's own Motion for Summary Judgment, the law cannot be applied retroactively.

**RSA 399-A**

e.  **There is no private right of action under RSA 399-A.**

RSA 399-A:16 (2014) provides a statutory structure for the New Hampshire Banking Department to regulate entities that make small loans, title loans, and payday loans. Throughout this chapter, the powers of the Banking Commissioner are described. RSA 399-A:8, I (2014) states that the banking department may issue cease and desist orders to an entity that it believes has violated this chapter. RSA 399-A:16 (2014) goes further into stating that it is the commissioner who "shall have the power to subpoena witnesses and administer oaths in any adjudicative proceeding" and compel the production of documents. RSA 399-A:16, II (2014) also requires the commissioner to adopt rules to enforce this chapter. RSA 399-A:16 (2014) sets forth other activities that the commissioner may do in relation to enforcing this chapter and gives broad power to "issue, amend, or rescind such orders as are reasonably necessary to carry out the provisions of this chapter."

In contrast to these broad powers of the Banking Commissioner, RSA 399-A:9 (2014) governs consumer complaints. Under this statute, a consumer may file his or her complaint regarding an entity licensed under this chapter with the Banking Commissioner. This statute then broadly describes how the commissioner and the licensee will handle the complaint. Id. There is no indication in this statute that a consumer may then file their claims in court. Id.

Given the broad powers of the commissioner to enforce this chapter and the inclusion of how a consumer may present their claim to the banking department, WBL submits that the plaintiff has no right of action under RSA 399-A. Therefore, her claims under this statute must be dismissed.

f.  **The loan granted to Absolut by WBL is not a "small loan" and is not governed by RSA 399-A.**

Even if there is a private right of action, RSA 399-A does not apply to the loan WBL granted to Absolut. The plaintiff has alleged that WBL charged fees prohibited by RSA 399-A:11, XI and improperly secured the loan with real estate in violation of RSA 399-A:11, VIII.[4] The definition section of RSA 399-A:1 demonstrates that this chapter does not apply to this loan. The plaintiff alleges that the loan is a "Small Loan" pursuant to RSA 399-A:1, XIV (2014). A small loan is defined as "a close-end loan in the amount of $10,000 or less." *Id*. at XIV. The principal of Absolut's loan was for $11,095.95. This is the amount of the loan disclosed in the Note, the amount in the Business Loan Purpose Affidavit, and Business Loan Summary.

The plaintiff cannot rely on the disbursement amount to claim the loan amount was $10,000 or less. In fact, on Absolut's loan application, it states that Absolut was seeking a loan of $10,000 to $20,000. Absolut was not seeking a "small loan"; it wanted to purchase two additional properties to expand its business, and it sought a loan of more than $10,000 to bring that to fruition.

While it is only under the current version of the statute, the addition to the definition of "small loan" to include a requirement that it be "for personal, family, or household use" demonstrates that this chapter does not apply to business loans. *Id*. at XX (2019). Absolut repeatedly warranted and swore to WBL that the loan would be used for business purposes and not for "personal, consumer, family or household purposes." Although the plaintiff is attempting to characterize the loan as a personal loan to her, this is not the case. This loan was made to a limited liability company for business purposes only.

---

[4] The plaintiff cites to RSA 399-A:15 in her Motion for Summary Judgment, which was not in effect at the time this loan originated. In her complaint, she cites to RSA 399-A:11, which was in effect than. WBL assumes that the plaintiff's claims are under the statute that was relevant at the time.

12

Finally, the promissory note from Absolut is not secured by an interest in real estate, which the plaintiff alleges is what violates RSA 399-A. It is the plaintiff's personal guaranty that is secured by the mortgage recorded at the Strafford County Registry of Deeds at Book 4190, Page 0891. Absolut is not a party to this mortgage, just as Ms. Randolph is not a party to the promissory note.

Because the loan to Absolut does not qualify as a small loan under RSA 399-A:1, the remaining provision of this chapter do not apply. Even if they do, Absolut's loan is not secured by an interest in real estate. Therefore, WBL submits that it is entitled to summary judgment on the plaintiff's claims under RSA 399-A.

## **RSA 358-A**

**g. The plaintiff's claim under RSA 358-A cannot prevail because they are based on statutory provisions that do not apply to this matter.**

Ms. Randolph's final remaining claim against WBL states that WBL engaged in unfair and deceptive trade practices in violation of RSA 358-A:2. WBL is entitled to judgment in its favor on the plaintiff's Consumer Protection Act ("CPA") claims. The plaintiff's entire argument that WBL has engaged in unfair and deceptive is that WBL has violated RSA 397-A:16-a and 399-A. As discussed above, none of these statutes apply to WBL or to the loan granted to Absolute. Therefore, neither the interest charged, the fees assessed, or the security interest in 16 Front St rise to the level of a violation of the CPA.

In fact, the plaintiff admitted in her Plaintiff's Reply Memorandum of Law, which was in response to WBL's Objection to the request for a preliminary injunction, that she "concedes" that WBL adequately disclosed all the aspects of this loan to Absolut: the interest rate, total amount the loan would cost, the fees and finance charges assessed, the end date of the loan, the

payments for the loan. As WBL disclosed all aspects, the plaintiff has not alleged any unfair or deceptive practices that Absolut suffered.

Without any allegation that WBL's actions did anything but violate irrelevant statutes, the plaintiff's claim cannot be successful. Therefore, WBL is entitled to judgment in its favor on this count.

### h. The plaintiff's allegations under RSA 358-A fall under the exemptions listed in RSA 358-A:3.

Even if we assume that WBL is subject to RSA 397-A and 399-A, the conduct complained of is listed in the conduct exempt from the New Hampshire CPA. RSA 358-A, therefore, does not apply to WBL or the conduct at issue. Ms. Randolph's claims under RSA 358-A fail, and WBL submits that it is entitled to judgment in its favor.

RSA 358-A:3 (2014) states that:

The following transactions shall be exempt from the provisions of this chapter:

I. Trade or commerce that is subject to the jurisdiction of the bank commissioner, the director of securities regulation, the insurance commissioner, the public utilities commission, the financial institutions and insurance regulators of other states, or federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices.

WBL's activity is subject to the jurisdiction of the New Hampshire Bank Commissioner. RSA 397-A:20, I (2014) clearly provides that it is the bank commissioner who "shall administer and enforce the provisions of this chapter." RSA 383:10-d (2014) further states that the commissioner has the exclusive authority and jurisdiction to investigate alleged conduct under RSA 358-A.

As WBL falls under the outlined exemption in RSA 358-A:3, Ms. Randolph's RSA Consumer Protection Act claims cannot stand. See In re Maroun, 427 B.R. 200, 204 (BNH

2010)(dismissing a CPA claim under this exemption when the defendant was subject to jurisdiction of the bank commissioner and RSA 397-A).  WBL is entitled to judgment in its favor on Ms. Randolph's CPA claims.

## IV. Conclusion

For the foregoing reasons, WBL respectfully submits that it is entitled to judgment as a matter of law on all of the plaintiff's remaining claims.

Respectfully submitted,

WBL SPE II, LLC
By Its Attorneys,
UPTON & HATFIELD, LLP

Date: October 30, 2018          By: /s/ Susan Aileen Lowry
                                    Susan Aileen Lowry  (NHBA 18955)
                                    Sabrina Beavens (NHBA 17525)
                                    10 Centre Street, P.O. Box 1090
                                    Concord, NH 03302-1090
                                    (603) 224-7791